**Julie STACK, Plaintiff,**

**v.**

**General Thomas TURNAGE, et al., Defendants.**

**Civ. No. 87–0538.**

United States District Court, M.D. Pennsylvania.

April 4, 1988.

contains four (4) counts alleging three separate causes of action against the various Defendants. Count I is for employment discrimination based on sex based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–1, *et seq.;* Count II of the complaint alleges a state pendent claim of intentional infliction of emotional distress against the Defendant Mahoney; Count III of the complaint sets forth a claim under Federal Tort Claims Act against the United States of America; and Count IV of the complaint sets forth a claim for punitive damages against Defendant Mahoney.

In response to the complaint, the Defendants have filed a motion to dismiss, or in the alternative, for summary judgment. The Defendants argue that Count I should be dismissed because the Plaintiff has failed to exhaust her available administrative remedies; Counts II and IV should be dismissed on the grounds that the Court lacks subject matter jurisdiction over pendent party Mahoney; Count III should be dismissed because the Plaintiff has failed to pursue her available administrative remedies under the Federal Tort Claims Act.

On November 16, 1987, the parties stipulated that the Defendants, Veterans Administration and Veterans Administration Medical Center were improper parties to this action and that they should, therefore, be dismissed. On November 30, 1987, the stipulation was approved by the Court.

FACTS

Plaintiff was employed by the Veterans Administration Medical Center in Wilkes–Barre, Pennsylvania, in November, 1979.

Plaintiff alleges that beginning April, 1984, her supervisor continually attempted to form a "personal" relationship with her, which the Plaintiff refused. Plaintiff alleges that as a result of her refusal to enter into the non-work related relationship with her supervisor, she was subjected by her supervisor to various forms of sexual harassment, loss of job opportunities, disciplinary action, reassignments, and unfavorable working conditions. Plaintiff further alleges that the Veterans Administration and the Medical Center failed to take any

Stephen G. Console, Kates & Mazzocone, Philadelphia, Pa., for plaintiff.

Serena H. Dobson, Asst. U.S. Atty., Philadelphia, Pa., James A. Gibbons, Barbara L. Kosik, Asst. U.S. Attys., Scranton, Pa., for defendants.

MEMORANDUM AND ORDER

CONABOY, District Judge.

PROCEDURAL HISTORY

Plaintiff, Julie Stack, initiated this action by filing a complaint in the United States District Court for the Eastern District of Pennsylvania. Thereafter, the action was transferred to the Middle District of Pennsylvania upon motion of the Defendants. Plaintiff named in the complaint the following Defendants: General Thomas Turnage, Administrator of the Veterans Administration; the Veterans Administration Medical Center of Wilkes–Barre, Pennsylvania; James Mahoney, Plaintiff's Supervisor at the Veterans Administration Medical Center in Wilkes–Barre, Pennsylvania; and the United States of America. The complaint

corrective actions to prevent her supervisor from harassing and sexually discriminating against her despite informal attempts on her part to resolve the situation. On February 10, 1986, the Plaintiff met with the Veterans Administration Medical Center's EEO counselor to discuss acts of discrimination and harassment directed toward her while an employee at the Medical Center.

Plaintiff received a notice of final interview with the EEO counselor on April 8, 1986. Thereafter, she filed on April 8, 1986, a formal complaint with her EEO counselor. Plaintiff alleges that she was forced to take sick leave at that time, and during this period she saw both a physician and a psychologist. In June, 1986, Plaintiff alleges that she felt compelled to resign her position in order to prevent her physical and psychological health from deteriorating any further.

Defendants currently maintain that Plaintiff's failure to comply with the regulations by submitting her complaints in an untimely fashion for administrative review severely hampered the agency's attempt to properly investigate her claims. On June 6, 1986, the EEO officer, Michael H. Parnell, advised Plaintiff's counsel of the specific problems encountered by the agency due to the untimeliness of her complaint and her allegations' lack of specificity. In that regard, Plaintiff was directed to submit additional information stating the specific incidents giving rise to her complaint, and whether Mrs. Stack contacted an EEO counselor concerning each incident.

Defendants indicate in their brief in support of the motion to dismiss that the Plaintiff responded to the request for information, however, it is not exactly clear as to what the Plaintiff submitted.

On October 10, 1986, Plaintiff's counsel wrote a letter to the Veterans Administration advising it of his legal representation of Plaintiff and requesting further advice regarding the resolution of Plaintiff's discrimination charges. Plaintiff avers that on December 12, 1986, she had not received her response from the Veterans Administration and, accordingly, filed the instant case in federal court.

ANALYSIS

*Exhaustion of Title VII Administrative Remedies.*

Before filing a Title VII suit in federal court, a federal employee is generally required to exhaust administrative remedies. See *Brown v. General Services Administration,* 425 U.S. 820 (1976).

The applicable regulation provides that a federal agency may accept a discrimination complaint only if:

(T)he complainant brought to the attention of the Equal Opportunity Counselor the matter causing him to believe he had been discriminated against within thirty calendar days of the date of that matter, or, if a personnel action, within thirty calendar days of its effective date;

29 C.F.R. § 1613.214(a)(1)(i). The strict thirty day rule is softened somewhat by the following exception:

The agency shall extend time limits in this section: (i) when the complainant shows that he was not notified of the time limits and was not otherwise aware of them, or that he was prevented by circumstances beyond his control from submitting the matter within the time limit; or (ii) for other reasons considered sufficient by the agency.

29 C.F.R. § 1613.214(a)(4).

Additionally, where a plaintiff is not complaining of a discreet act of discrimination, the doctrine of continuing discrimination may exempt him or her from the strict time requirements of Title VII. The rationale for this doctrine is "to provide a remedy for past actions which operate to discriminate against the complainant at the present time." *Olson v. Rembrandt Printing Co.,* 511 F.2d 1228, 1234 (8th Cir.1975). However, to demonstrate a continuing violation a Plaintiff must show "a series of related acts, one or more of which falls within the limitation period, or the maintenance of a discriminatory system both before and during the [limitations] ..." *Valentino v. United States Postal Service,* 674 F.2d 56, 65 (D.C.Cir.1982).

In any event, after a plaintiff presents a complaint to the counselor, if the complain-

ant is not satisfied with the results of the counselor's efforts, he or she must file a written complaint with the agency. This written complaint cannot be filed earlier than 21 days after the first contact with the EEO counselor, nor later than fifteen days after the counselor's notice of completion of the counseling process. 29 C.F.R. § 1613.213 and § 1613.214(a)(1)(ii). Failure to comply with these requirements subjects the complaint to rejection. 29 C.F.R. § 1613.215.

After the filing of a complaint with the EEOC, an employee has a statutory right to file a civil action in an appropriate United States District Court in four circumstances:

(a) within thirty (30) calendar days of the receipt of notice of final action taken by the agency on a complaint,

(b) after one hundred eighty (180) calendar days from the date of filing a complaint with the agency if there has been no decision,

(c) within thirty (30) calendar days after receipt of final action taken by the commission on the complaint, or

(d) after one hundred eighty (180) calendar days from the date of filing an appeal with the commission, if there has been no commission decision.

Section 717 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16; 29 C.F.R. § 1613.281.

The Defendants currently argue that the court lacks subject matter jurisdiction with regard to the Title VII complaint on the grounds that Plaintiff has failed to exhaust her administrative remedies. The crux of the Defendants' argument is two-fold: (1) that the Plaintiff failed to timely report the alleged discrimination to the EEO counselor; and (2) that the Plaintiff failed to fully pursue her EEO complaint after its acceptance for review.

In response, the Plaintiff points out that a portion of the discriminatory acts occurred within the thirty (30) day period preceding Plaintiff's discussion with the EEO counselor on February 10, 1986. Furthermore, Plaintiff asserts that following her informal meeting with the EEO counselor, but before filing her formal complaint, the harassment increased at a level that she was forced to take a sick leave and later resign. Moreover, Plaintiff argues that the she was a victim of continuing discrimination and was prevented by circumstances beyond her control from reporting her harassment to the EEO counselor.

With regard to Defendants' suggestion that she failed to fully pursue the administrative remedies, Plaintiff argues that she waited over the one hundred eighty (180) days required by the Statute before filing her complaint in the district court; thus, Plaintiff avers that she followed and exhausted the administrative remedies required and provided by the Equal Employment Opportunity Act.

■ Considering the above arguments, the Court finds that the Plaintiff's Title VII complaint is properly before this Court. With regard to the first argument, it seems clear that at least some of the alleged discriminatory acts occurred within the thirty (30) day period preceding the Plaintiff's informal discussion with the EEO counselor on February 10, 1986. Furthermore, the Plaintiff alleges that the discriminatory acts continued during the course of the informal proceedings and that those acts were consistent with the discrimination that had occurred in the preceding two years. There can be no doubt that those complaints would properly be included in the EEOC complaint which was filed on March 8, 1986. However, it is not so clear whether all other events which were not brought to the attention of the EEO counselor within thirty (30) days of their occurrence are properly before this Court. The Plaintiff argues that the continuing nature of the discrimination should except her from the strict time requirements. The Court is not in a posture to rule on this question which presents both questions of fact and unbriefed legal issues. Thus, we will leave this matter to another day.

■ With regard to the Defendants' second argument, there can be no dispute that after the Plaintiff filed her complaint with

the EEOC, one hundred eighty (180) days had passed before the Plaintiff filed her Title VII action in the federal district court. Despite the Defendants' argument that the Plaintiff should have allowed that administrative complaint process to fully run its course, the Court finds that the Plaintiff has a statutory right to file in federal court after one hundred eighty (180) days have elapsed. As the Court stated in *Waiters v. Parsons*, 729 F.2d 233 (3d Cir.1984):

> In general, before filing a Title VII suit, a federal employee charging an employer with discrimination must file a complaint with the EEOC and allow 180 days to pass during which the EEOC will attempt to resolve the dispute without resorting to litigation. At the end of the 180 day period the employee is entitled to sue, *regardless of the pendency of EEOC proceedings.*

Id., at 237 (emphasis added). *See also Brown v. GSA*, 425 U.S. 820, 832, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402 (1976); *Larking v. Egger*, 117 F.R.D. 26, 29 (D.Mass.1987).

The Court recognizes that the more informal administrative process is the preferred manner to resolve employment discrimination suits. That process should provide a speedy, just, inexpensive, and informal resolution of the problem. It is with that in mind that a party is generally required to exhaust that remedy before filing a complaint in federal court. Yet, Congress seemingly recognized when enacting the Title VII framework that administrative remedies at times do not provide a timely resolution of claims; accordingly, it gave a federal employee the statutory right to file a complaint in federal court where 180 days elapsed from the time the EEOC complaint was filed.

Although the Defendants argue that the Plaintiff frustrated the administrative process when she filed her complaint in federal court, the argument seems particularly feeble when one considers that the complaint should have been completely resolved by the time the Plaintiff came to federal court. As 29 C.F.R. § 1613.220 indicates:

> The complaint shall be resolved promptly. To this end, both the complainant

and the agency shall proceed with the complaint without undue delay so that the complaint is resolved within one hundred eighty (180) calendar days after it was filed, including time spent in the processing of the complaint by the administrative judge under § 1613.218.

In light of the above, the Defendants' motion to dismiss Plaintiff's Title VII claim for failure to exhaust administrative remedies is denied.

*Plaintiff's Claims Against Defendant Mahoney.*

■ Plaintiff asserts a state law claim of intentional infliction of emotional distress against Defendant Mahoney in Count II of the complaint and seeks an award of punitive damages in Count IV. Defendants argues that this Court lacks subject matter jurisdiction over those counts. Defendants point out that Title VII provides federal employees a remedy that precludes actions against federal officials for alleged constitutional violations, as well as actions under other federal legislation and that a Title VII action is properly filed only against the head of the relevant federal agency. We agree with the Defendants recitation of the law in this regard and conclude that Title VII provides the Plaintiff with her exclusive *federal* remedy and that the Plaintiff has no cognizable federal claim against Defendant Mahoney.

■ Defendants further argue that the Court may not assert jurisdiction over the Plaintiff's state claims against Defendant Mahoney under the doctrine of pendent jurisdiction. Defendants point out that the jurisdictional statutes invoked by the Plaintiff confer jurisdiction only over Defendant Turnage and the United States and the terms of the statutes do not allow for the inclusion of any other Defendants. Furthermore, Defendants assert that the Plaintiff has failed to allege any independent basis of federal jurisdiction over Defendant Mahoney.

The question of whether the Court should exercise pendent party jurisdiction over Defendant Mahoney does not lend itself to an easy resolution. Various federal courts have addressed the propriety of

hearing pending pendent state claims in *private employment* Title VII lawsuits, and have come down on both sides of the issue. For instance, in *Bennett v. Southern Marine Management Company,* 531 F.Supp. 115 (M.D.Fla.1982), the Court found that it did not have the power to entertain state pendent claims as such an exercise of jurisdiction would conflict with the important federal policies underlying Title VII. The Court stated:

> There are several characteristics of Title VII that suggests that hearing certain state claims as pendent claims in a Title VII suit may conflict with the intent of the statute. First, the relief available under state tort claims may make entertaining such claims inconsistent with the "congressional intent of limited relief" under Title VII. See *Lim v. The International Institute of Metropolitan, Detroit, Inc.,* 510 F.Supp. 722 (E.D.Mich. 1981). Title VII unquestionably provides only equitable relief, including reinstatement and back pay. The Supreme Court has stated that the purpose of Title VII's remedial provision is "to make persons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Co. v. Moody,* 422 U.S. 405 [95 S.Ct. 2362, 45 L.Ed.2d 280] (1975).

> .    .    .    .    .

> The court in *Lim, supra,* noted additional procedural characteristics of Title VII, however, and considered them more significant than Title VII's remedial provisions in indicating a congressional policy against entertaining state claims of the kind presented in this case. Title VII cases are to be tried to a judge, and are to be expedited. 42 U.S.C. § 2000e–5(f)(4)—(5). If the court is unable to try a case within 120 days, it is empowered to refer the case to a master. Id. Section 2000e–5(f)(5). These and other provisions of Title VII indicate a clear congressional policy that Title VII cases be adjudicated as promptly as possible. To hear state contract and tort claims in a Title VII case would conflict with this policy.

*Bennett, supra.,* at p. 117.

On the other hand, the Tenth Circuit in *Jones v. Intermountain Power Project,* 794 F.2d 546 (10th Cir.1986), found that neither the Title VII statute conferring jurisdiction of federal claims nor the congressional record suggests a congressional intent to negate exercise of pendent claim jurisdiction over state claims which share a common nucleus of operative facts. Similarly, the court in *Gilardi v. Schroeder,* 833 F.2d 1226 (7th Cir.1987), allowed the court to hear the state law claims of battery and intentional infliction of emotional distress which were pendent to the Title VII suit against her employer.

Finally, the Court in *Bowersox v. P.H. Glatfelter Co.,* 677 F.Supp. 307 (M.D.Pa. 1988) recently considered this issue. There, Judge Rambo found it appropriate in a Title VII action to exercise pendent jurisdiction over a female employee's state law claim for intentional infliction of emotional distress where the state law claims arose out of the same nucleus of operative fact as the underlying federal claims. The Court noted that allowing the pursuit of the state law claims in conjunction with the federal claim would promote convenience and judicial economy.

Consistent with these private employment Title VII cases, pendent party jurisdiction has been utilized in the federal employment context. The court takes note that *Owens v. United States,* 822 F.2d 408 (1987) presents facts and claims that are strikingly similar to those in this action. In *Owens,* a Veterans Administration employee brought an action against a staff physician, her supervisors and the Administrator of the Veterans Administration. The complaint sought damages against the defendants under (1) the fourteenth amendment of the United States Constitution, pursuant to Title VII and 42 U.S.C. § 1983; (2) the Constitution of the State of New Jersey; and (3) the common law of New Jersey. The district court found that Title VII barred the plaintiff's constitutional and § 1983 claims against the staff physician

and her supervisors, but found that Plaintiff's Title VII claim against the head of the Veterans Administration and the state claims against the other defendants could go forward. In affirming the majority of the district courts rulings, the Court of Appeals found that the pleadings contained insufficient allegations and information to determine whether the doctrine of absolute immunity shields the supervisory defendants from the state claims against them.

Although the Court did not directly address the issue presently before this court, the case may be read to imply that a districts court's consideration of state tort claims along with a Title VII claim breaches no jurisdictional prohibition.

In light of the above, this Court finds that the exercise of pendent party jurisdiction over Defendant Mahoney is appropriate in the circumstances of this case. In holding so, the Court finds that a consideration of the pendent state law claims will not affect the complexity of this case to any great extent. Although the state law claims will inevitably open up issues of compensatory and punitive damages, and may be triable to a jury, the Court notes that these burdens do not outweigh the resultant waste of judicial resources and hardship to the Plaintiff if this Court chose to decline pendent party jurisdiction. In that regard, the Plaintiff's motion to dismiss Count II and Count IV of the Plaintiff's complaint will be denied.

*Exhaustion of Administrative Remedies Under F.T.C.A.*

Defendants seek to dismiss Count III of Plaintiff's complaint which asserts a claim against the United States of America under the Federal Tort Claims Act, 28 U.S. C. Sec. 2671, *et seq.* Defendants have demonstrated that Plaintiff failed to file an administrative claim for her tort damages pursuant to the directives of the F.T.C.A. As the strict adherance to the administrative procedure is a jurisdictional prerequisite to suit which may not be waived, the Court finds that the Defendants' motion should be granted. Moreover, as indicated previously in this opinion Title VII provides the plaintiff with her exclusive federal remedy against the federal officials in this case.